**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 16-cv-02500-MSK-MEH**

**CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.,**

    **Plaintiff,**

**v.**

**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,**

    **Defendant.**

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Travelers")

Motion for Summary Judgment **(# 49)**, the Plaintiff's ("Center") response **(# 52)**, and Travelers'

reply **(# 53)**.

## FACTS

The pertinent facts in this case are simple and largely undisputed. Beginning in 2003,

Center leased commercial property located in Colorado Springs, CO, from a Landlord. The

terms of Center's lease with the Landlord provided that Center would be "responsible for

maintaining the Property in good order and repair, and for maintaining, repairing, and, as

necessary, replacing the HVAC systems [and roof]." In 2012, the region experienced multiple,

significant hailstorms. It is undisputed that these hailstorms damaged the roof and HVAC

system at the property. However, it does not appear that Center made a claim against its casualty insurer, Travelers, at this time.[1]

In 2014, Center brought suit against the Landlord for breaches of the real estate lease that are irrelevant here. In response, the Landlord asserted a counterclaim against Center, sounding in breach of contract and alleging that Center had not repaired the damage to the roof and HVAC system caused by the hail storms. Center tendered the counterclaim to Travelers, requesting that Travelers defend and indemnify Center in the underlying lawsuit (or, at the very least, the counterclaim). Travelers refused both defense and indemnification, contending that the counterclaim was not an "occurrence" under the terms of the insurance policies and did not allege "property damage" sufficient to trigger coverage. Center proceeded to trial on the counterclaim at its own expense and, ultimately, prevailed on that counterclaim.

Center then commenced the instant action against Travelers, seeking to recover the costs it incurred in defending itself against the Landlord's counterclaim. Center asserts **(# 47)** claims for breach of contract, common-law bad faith breach of contract, and breach of the duty of good faith and fair dealing, all under Colorado law.[2] Travelers now moves **(# 49)** for summary judgment in its favor on all claims, arguing that the counterclaim did not trigger any duty to defend under the terms of its policies.

---

[1]    Center is covered by two separate policies issued by Travelers. The terms of the two policies are functionally identical, and the Court need not differentiate between them for purposes of this analysis. For convenience, the Court will refer to the Travelers' "policy" in the singular.

[2]    Travelers' motion argues that, under choice-of-law principles, Colorado provides the substantive law governing Center's claims. Center agrees. Therefore, the Court will apply Colorado law in this action.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B.  Merits

Under Colorado law, an insurer has the duty to tender a defense in any circumstance where the insured is subjected to a claim by another that "alleges any facts that might fall within the coverage of the policy."  *KF 103-CV, LLC v. American Family Mut. Ins. Co.*, 630 Fed.Appx. 826, 830 (10th Cir. 2015), *citing Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004). That assessment is made based on the factual allegations in the underlying complaint, not on the legal theory that is asserted based on those allegations. *Gerrity Co. v. CIGNA Property & Cas. Co.*, 860 P.2d 606, 607 (Colo.App. 1993).  If the allegations "state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded," a duty to defend exists.  *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

The Travelers policy at issue here provides coverage to Center for "property damage [that] is caused by an occurrence."  The term "occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful

conditions." The term "property damage" is defined by the policy as "physical injury to tangible property, including all resulting loss of use of that property."

Travelers argues that, because the Landlord's counterclaim against Center sounds in breach of contract – that is, an allegation that Center failed to perform its contractual duty to maintain and repair the roof and HVAC system – the Center's failure to perform does not constitute an accidental "occurrence." Similarly, it argues that the claim by the Landlord against Center concerned contract damages, not "physical injury to tangible property" as is necessary for the claim to involve "property damage." Center, for its part, argues that it is irrelevant that the Landlord's claim was presented as one for breach of contract, and that the facts alleged by the Landlord could just as easily been asserted as claims for "conversion, negligence, or some other tort" for which coverage would be available.

The Court pauses at this juncture to observe that Center has not argued that, if the counterclaim is strictly construed as a claim for breach of contract, no coverage – and thus no duty to defend – would exist. It acknowledges that Travelers has cited "authorities from other jurisdictions which state that insurers are not required to provide a defense to claims sounding in contract," but beyond arguing that such authorities are non-binding, it does not appear to argue that, somehow, a party's own breach of contract would constitute an "accident[al]" occurrence. Even if non-binding, the Court finds those authorities generally persuasive. By insuring Center against "accidental" losses, Travelers was agreeing to cover Center for injuries it might sustain that were outside of Center's control. But the failure to comply with the terms of the commercial lease – that is, the failure of Center to "maintain" and repair" the roof and HVAC system after

5

the hail storms had ended[3]  – is a matter that was exclusively <u>within</u> Center's control.  *See e.g. Magic Valley Potato Shippers v. Continental Ins.*, 739 P.2d 372, 375 (Id. 1987) ("The Harper v. MVP lawsuit was a contract action, and there was no allegation of either "property damage" or an "occurrence" within the meaning of the policy"), *cited with approval in Gerrity*, 860 P.2d at 607-08. Thus, this Court generally agrees with Travelers that, if the Landlord's claim against Center sounds solely in contract, coverage under the policy would not exist and Travelers would have no duty to tender a defense to Center.

That leaves the question of whether, as Center urges, the facts articulated by the Landlord could give rise to any type of tort claim that would be fairly capable of being identified as "accidental."  As *Hecla* states, the Court should look beyond the labels placed by the Landlord on the counterclaim and examine whether the facts alleged in the counterclaim "state[s] a claim which is potentially or arguably within the policy coverage." Center argues that the Landlord's factual allegations "could also have supported a negligence or conversion counterclaim."

That argument is without merit.  The Landlord's counterclaim is fairly sparse in its factual averments, stating simply that: (i) Landlord and Center entered into a lease, under which Center agreed to be responsible for maintaining, repairing, and replacing the roof and HVAC system, (ii) Center did not maintain the roof and HVAC system, in that it failed to repair the damage caused by the 2012 hail storms,[4] and (iii) as a result, the Landlord suffered losses.

_____

[3]      Travelers seems to suggest that, in 2014, Center made "a first-party property claim . . . for hail damage," and that Travelers adjusted and paid that claim.  This would, theoretically, suggest that Center could have used that payment to make the roof and HVAC repairs required by its lease with the Landlord, avoiding exposure the counterclaim entirely.  Ultimately, however, whether Center did or did not make a first-party claim to Travelers, and whether Travelers did or did not pay that claim, is outside the scope of the record and irrelevant to the analysis herein.

[4]      The counterclaim also alleged that the Landlord advised Center "of roof leaks and problems during the term of the building lease" and that Center "did not satisfactorily resolve

Contrary to Center's arguments, these facts can only give rise to a colorable cause of action for breach of contract. For these allegations to state a claim for negligence, the Landlord would have to allege facts showing that Center had some legal duty to maintain and repair the roof and HVAC system that arose from somewhere <u>other than</u> the commercial lease. *See Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269-70 (Colo. 2000). Nothing in the Landlord's allegations suggest any common-law duty imposed upon a lessee to maintain the lessor's property or to repair damage to the lessor's property by causes outside the lessee's control. Accordingly, the Court sees nothing in the facts alleged by the Landlord that would state a claim for common-law negligence.[5]

Accordingly, the Court finds that the only cause of action cognizable under the facts alleged by the Landlord is one for breach of contract. For the reasons stated above, a breach of contract by Center does not and cannot constitute an accidental "occurrence" as defined by the policy. Thus, Travelers is correct that there was no possibility that the policy would cover the Landlord's counterclaim against Center, and Travelers was under no obligation to tender a defense to Center on that counterclaim. Because the Court finds, as a matter of law, that Travelers had no obligation to tender a defense, Travelers is entitled to summary judgment on all of Center's claims, all of which are predicated on the notion that Travelers had a duty to defend Center against the counterclaim.

---

these problems." It is not clear from the counterclaim whether these leaks and problems were the alleged result of the hail storms or of some other cause. The parties have not focused their attention on this portion of the counterclaim and, therefore, the Court ignores it as well.

[5]    Center's suggestion that the Landlord's factual averments could give rise to a claim for conversion is even more problematic. Putting aside the absence of facts that would state all of the elements of conversion, conversion is an intentional tort. An allegation that Center <u>intentionally</u> deprived the Landlord of its property would be difficult to fit within the requirement that an "occurrence" be <u>accidental</u>.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Traveler's Motion for Summary

Judgment **(# 49)**. The Clerk of the Court shall enter judgment in favor of Travelers on all claims

and close this case.

Dated this 16th day of February, 2018.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

8